IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-416

Filed: 7 January 2020

N.C. Industrial Commission, I.C. No. TA-26087

NANNY'S KORNER DAY CARE CENTER, INC., Plaintiff,

v.

NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF CHILD DEVELOPMENT, Defendant.

Appeal by Plaintiff from order entered 21 December 2018 by the North Carolina Industrial Commission. Heard in the Court of Appeals 17 October 2019.

*Ralph T. Bryant, Jr., for Plaintiff-Appellant.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Charles Whitehead, for Defendant-Appellee.*

COLLINS, Judge.

Nanny's Korner Day Care Center, Inc. ("Plaintiff"), appeals from order entered on 21 December 2018 by the North Carolina Industrial Commission dismissing Plaintiff's claim against the North Carolina Department of Health and Human Services, Division of Child Development ("Defendant"), under the North Carolina Tort Claims Act. Because Plaintiff's claim is barred by the statute of limitations, we affirm.

## I. Factual and Procedural History

This is the third time the parties have been before this Court in the last five years. A detailed factual history of this case can be found at *Nanny's Korner Day Care Ctr., Inc. v. N.C. Dep't of Health & Human Servs.*, 825 S.E.2d 34 (N.C. Ct. App. 2019) ("*Nanny's Korner II*"). The facts relevant to this case are as follows:

On 23 April 2010, Defendant notified Plaintiff that Defendant had decided to issue administrative disciplinary action based on substantiation by the Robeson County Department of Social Services that child abuse had occurred at Plaintiff's day care facility. Defendant then issued a notice of administrative action to Plaintiff on 15 June 2010, invoking disciplinary action. Plaintiff appealed Defendant's decision through the administrative appeal process, first to the Office of Administrative Hearings, then to Wake County Superior Court, and then to this Court. On 20 May 2014, this Court held that Defendant had violated Plaintiff's rights by not conducting an independent investigation into the alleged child abuse, and reversed Defendant's decision. *Nanny's Korner Care Ctr. v. N.C. Dep't of Health & Hum. Servs.*, 234 N.C. App. 51, 64, 758 S.E.2d 423, 431 (2014) ("*Nanny's Korner I*").

On 23 January 2017, Plaintiff filed a claim with the Industrial Commission under the Tort Claims Act, seeking $600,000 in compensatory and consequential damages due to Defendant's negligent failure to conduct an independent investigation prior to initiating disciplinary action. Defendant responded by filing a

motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure on the ground, inter alia, that Plaintiff failed to file the tort affidavit within three years of Defendant's 15 June 2010 administrative action, as required by the Tort Claims Act. After a hearing on 19 April 2017, Deputy Commissioner Robert J. Harris issued an order on 4 May 2017, dismissing Plaintiff's claim with prejudice because the claim was barred by the statute of limitations. Plaintiff appealed to the Full Commission (the "Commission").

The Commission conducted a hearing on 18 October 2017. On 21 December 2018, the Commission issued an order dismissing Plaintiff's claim with prejudice, holding that the claim was barred by the statute of limitations. The Commission concluded that "the time period for Plaintiff to bring a claim for damages under the Tort Claims Act began on 15 June 2010 and its Affidavit, filed on 23 January 2017, fell outside of the Tort Claims Act's three-year statute of limitations."

Plaintiff timely filed notice of appeal to this Court.

## II. Discussion

Plaintiff argues that the Commission erred by dismissing Plaintiff's claim as barred by the Tort Claims Act's three-year statute of limitations. Plaintiff contends that (1) the statute of limitations was tolled while Plaintiff exhausted administrative remedies; (2) the Court of Appeals' May 2014 decision in *Nanny's Korner I* signified Plaintiff's exhaustion of administrative remedies and, accordingly, marked the

beginning of the three-year limitations period; and (3) therefore, Plaintiff's January 2017 claim was timely filed.  We disagree.

We review a decision by the Commission under the Tort Claims Act "for errors of law only under the same terms and conditions as govern appeals in ordinary civil actions, and the findings of fact of the Commission shall be conclusive if there is any competent evidence to support them."  N.C. Gen. Stat. § 143-293 (2018).  When considering a motion to dismiss under Rule 12(b)(6) of the Rules of Civil Procedure, "[t]he question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory . . . ."  *Grant Const. Co. v. McRae*, 146 N.C. App. 370, 373, 553 S.E.2d 89, 91 (2001) (internal quotation marks and citation omitted).  We review an order allowing a motion to dismiss for failure to state a claim de novo. *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4 (2003).

"The statute of limitations may be raised as a defense by a Rule 12(b)(6) motion to dismiss if it appears on the face of the complaint that such a statute bars the plaintiff's action." *Laster v. Francis*, 199 N.C. App. 572, 576, 681 S.E.2d 858, 861 (2009) (citation omitted).  After a defendant has raised this affirmative defense, the burden shifts to the plaintiff to prove that he commenced the action within the statutory period. *Id.*

The Tort Claims Act prescribes a three-year statute of limitations for negligence claims. N.C. Gen. Stat. §143-299 (2018).

> The accrual of the statute of limitations period typically begins when the plaintiff is injured or discovers he or she has been injured. However, when the General Assembly provides an effective administrative remedy by statute, that remedy is exclusive and the party must pursue and exhaust it before resorting to the courts. Nevertheless, the exhaustion of administrative remedies doctrine is inapplicable when the remedies sought are not considered in the administrative proceeding. Under those circumstances, the administrative remedy will not bar a claimant from pursuing an adequate remedy in civil court.

*Nanny's Korner II,* 825 S.E.2d at 39-40 (internal quotation marks, brackets, and citations omitted). *See White v. Trew*, 217 N.C. App. 574, 579-80, 720 S.E.2d 713, 719 (2011) (holding that plaintiff's libel claim seeking monetary damages caused by false statements was not barred by the exhaustion doctrine because the statutory remedy was to remove statements from employee file, not to award damages), *rev'd on other grounds*, 366 N.C. 360, 736 S.E.2d 166 (2013). Money damages are not available under the North Carolina Administrative Procedure Act ("NCAPA"). *Nanny's Korner II,* 825 S.E.2d at 40.

In *Nanny's Korner II*, Plaintiff made a similar argument to the one it makes in this case, but in the context of a procedural due process claim filed in the trial court:

> Plaintiff argues the statute of limitations was tolled while Plaintiff exhausted its administrative remedies through the appeal of Defendant's final agency decision in *Nanny's Korner I.* Plaintiff contends the exhaustion of

administrative remedies doctrine required Plaintiff to exhaust its remedy through the claim under the NCAPA before Plaintiff's right to bring a constitutional claim arose. Accordingly, Plaintiff argues that its cause of action for the alleged due process violation did not accrue until 9 June 2014, when this Court issued its mandate in *Nanny's Korner I*.

*Id.*

We disagreed and concluded that Plaintiff's constitutional procedural due process claim was properly dismissed under Rule 12(b)(6) because the statute of limitations on Plaintiff's constitutional claim was not tolled while Plaintiff exhausted its administrative remedies. *Id.* at 40-41. This Court held that

> the statute of limitations began to run on or about 15 June 2010, when Defendant issued the written warning to Plaintiff. Defendant's written warning was the "breach" that proximately caused—in Plaintiff's own words—a "real, immediate, and inescapable" injury. The statute of limitations began to run when Plaintiff was injured or discovered the injury, which in this case happened almost simultaneously. The statute of limitations was not tolled while Plaintiff pursued its administrative remedies in *Nanny's Korner I* because in that action, Plaintiff sought a remedy not available through the NCAPA—namely, monetary damages. In its complaint, Plaintiff acknowledges that the NCAPA "does not provide a remedy for . . . lost income and profits." Therefore, the statute of limitations was not tolled while Plaintiff pursued its administrative remedies, and the filing of the instant claim on 22 May 2017 fell outside the statute of limitations.

*Id.* at 40.

The same analysis is applicable in this case. Despite the fact that Plaintiff brought this action before the Commission under the Tort Claims Act, as opposed to the superior court with a constitutional claim in *Nanny's Korner II*, the statute of limitations began to run on or about 15 June 2010, when Defendant issued the written warning to Plaintiff. The statute of limitations was not tolled while Plaintiff pursued its administrative remedies in *Nanny's Korner I* because Plaintiff seeks monetary damages, a remedy not available under the NCAPA. Accordingly, the filing of the instant claim on 23 January 2017 fell outside the three-year statute of limitations prescribed in the Tort Claims Act. *See* N.C. Gen. Stat. §143-299.

Plaintiff argues that *Abrons Family Prac. & Urgent Care, PA v. N.C. Dep't of Health & Human Servs.*, 370 N.C. 443, 810 S.E.2d 224 (2018), demands application of the exhaustion of administrative remedies doctrine. In *Abrons*, plaintiffs—all of whom were health care providers—filed suit against DHHS and Computer Sciences Corporation ("CSC"). *Id.* at 444-45, 810 S.E.2d at 226. DHHS had entered into a contract with CSC to implement a new Medicaid Management Information System. *Id.* at 445, 810 S.E.2d at 226. After the system went live, plaintiffs began submitting claims to DHHS for Medicaid reimbursements. *Id.* However, glitches in the software resulted in delayed, incorrectly paid, or unpaid reimbursements to plaintiffs. *Id.* Plaintiffs filed claims—including claims for monetary damages—alleging that CSC was negligent in its design and implementation of the system and that DHHS

breached its contracts with each of the plaintiffs by failing to pay Medicaid reimbursements. *Id.* Further, plaintiffs alleged that "they had a contractual right to receive payment for reimbursement claims and that this was 'a property right that could not be taken without just compensation.'" *Id.* Moreover, plaintiffs "sought a declaratory judgment that the methodology for payment of Medicaid reimbursement claims established by DHHS violated Medicaid reimbursement rules." *Id.* at 445, 810 S.E.2d at 227.

After receiving adverse determinations on their reimbursement claims, plaintiffs failed to request a reconsideration review or file a petition for a contested case, as specifically required by DHHS procedures. *Id.* at 448, 810 S.E.2d at 228; *see also id.* at 446-47, 810 S.E.2d at 227-28 (discussing DHHS regulations and provisions of the NCAPA which specifically require Medicaid providers to request a reconsideration review and file a petition for a contested case hearing before obtaining judicial review). As a result, our Supreme Court held that the trial court correctly dismissed plaintiffs' claims because they failed to exhaust their administrative remedies and failed to demonstrate that such exhaustion would be futile. *Id.* at 453, 810 S.E.2d at 232. The Court explained: "Because resolution of the reimbursement claims must come from DHHS, simply inserting a prayer for monetary damages does not automatically demonstrate that pursuing administrative remedies would be futile. Notwithstanding the claims that are outside the relief that

can be granted by an administrative law judge, the reimbursement claims 'should properly be determined in the first instance by the agenc[y] statutorily charged with administering' the Medicaid program." *Id.* at 452, 810 S.E.2d at 231 (quoting *Jackson ex rel. Jackson v. N.C. Dep't of Human Res.*, 131 N.C. App. 179, 188-89, 505 S.E.2d 899, 905 (1998)).

In this case, Plaintiff has filed a claim with the Commission under the Tort Claims Act, seeking compensatory and consequential damages due to Defendant's negligence. Unlike the relevant claims in *Abrons*, this claim is exclusively one for negligence and, therefore, it is not a mere "insertion of a prayer for monetary damages" into what is otherwise a claim that is primarily administrative. *Id.* *See Intersal, Inc. v. Hamilton*, 834 S.E.2d 404, 416 (N.C. 2019) (distinguishing *Abrons*: "Here, plaintiff has filed a claim against the State Defendants for their alleged violations of plaintiff's media rights under the 2013 Settlement Agreement. Unlike the relevant claims in *Abrons*, this claim is exclusively one for common law breach of contract and, therefore, it is not a mere 'insertion of a prayer for monetary damages' into what is otherwise a claim that is primarily administrative.") (citation omitted).

### III. Conclusion

Because the statute of limitations on Plaintiff's claim began to run on or about 15 June 2010, the filing of the instant claim on 23 January 2017 fell outside the three-

year statute of limitations prescribed by the Tort Claims Act.  Accordingly, we affirm the Commission's order dismissing Plaintiff's claim with prejudice.

AFFIRMED.

Judges ARROWOOD and HAMPSON concur.